**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Jorge Francisco LAGARDA–AGUILAR,**
**Defendant-Appellee.**

**No. 79–1401.**

United States Court of Appeals,
Ninth Circuit.

April 23, 1980.

Eugene R. Bracamonte, Asst. U. S. Atty., Tucson, Ariz., for plaintiff-appellant.

Roger C. Wolf, Tucson, Ariz., for defendant-appellee.

Before MERRILL, TANG and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

The United States sought unsuccessfully in the district court to convict the alien appellee, Lagarda-Aguilar, of illegal entry after deportation in violation of 8 U.S.C. § 1326 (1976). The district court dismissed the indictment because, prior to the institution of these proceedings, the alien had been permitted to enter this country on parole, and there had never been any written notice of termination of parole as required by applicable regulations. 8 C.F.R. § 212.5(b) (1979). The government appeals, and we affirm the district court.

It is undisputed that appellee was deported in 1977. It is also undisputed that he subsequently reentered this country in 1978 from Mexico upon parole in accordance with 8 U.S.C. § 1182(d)(5) (1976), and that later in 1978 he was escorted to the Mexican border by government agents. He was never furnished written notice of termination of the parole, however, nor is there any indication in the record that he was ever advised, either orally or in writing, that the parole was to terminate automatically on a given date. Indeed, there is no record of any formal termination of the parole status.

We agree with appellant that if the parole was never terminated, the government is not entitled to prosecute the appellee for his current presence in the United States. The underlying question in this appeal is thus whether the appellee's parole was ever terminated.

The statute authorizing parole status places great discretion in the Attorney General. 8 U.S.C. § 1182(d)(5) (1976).[1] The statute is silent as to how the decisions as to both granting and terminating parole are to be made and implemented. INS regulations and operating instructions, however, provide some guidance. Only certain INS officials are authorized to terminate parole, and termination must be based on a finding that the parole status is no longer in the public interest, or upon expiration of the period of time for which parole may have originally been authorized. 8 C.F.R. § 212.5 (1979); INS O.I. 212.5a, 212.5c, 235.11e, *reprinted in* 4 C. Gordon & H. Rosenfield, Immigration Law & Procedure at 23–167, 168, 466 (1979).

With respect to effecting a parole termination, the INS regulations are very specific:

> At the expiration of the period of time or upon accomplishment of the purpose for which parole was authorized or when in the opinion of the district director in charge of the area in which the alien is located that neither emergency nor public interest warrants the continued presence of the alien in the United States, *parole shall be terminated upon written notice to the alien and he shall be restored to the status which he had at the time of parole . . . .*

8 C.F.R. § 212.5(b) (1979) (emphasis supplied).

■ The language of the regulation virtually compels this Court to conclude that, before an alien paroled into this country may lawfully be expelled, there must be written notice of parole termination. That is precisely the view taken by the Board of Immigration Appeals in *Matter of O*, 16 I. & N. Dec. ____ (I.D. 2614, 1977), in which the Board held that exclusion proceedings could not be instituted against aliens paroled into this country until the INS provided them with written notice of termination of their parole.

■ The government contends that violation of the regulation requiring written notice made no difference in this case because the alien had actual notice of a termination by INS agents when they took him to the border. The argument assumes the very point in issue, i. e. that a termination ever occurred. All that actually happened in this case was that INS agents physically expelled the appellant from this country. Termination of parole should not be, and is not under applicable regulations, left to the whim of INS agents in that manner. The requirement of written notice is the only safeguard, for both the alien and the United States government, that parole status is administered in an orderly manner. *See Ahrens v. Rojas*, 292 F.2d 406 (5th Cir. 1961); *Wong Hing Fun v. Esperdy*, 335 F.2d 656 (2d Cir. 1964), *cert. denied*, 379 U.S. 970, 85 S.Ct. 667, 13 L.Ed.2d 562 (1965). We therefore hold that written notice is essential to effectuate a termination.

Affirmed.

1. 8 U.S.C. § 1182(d)(5) (1976) provides:

The Attorney General may in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.