UNITED STATES of America,
Plaintiff–Appellee,

v.

Martin Francisco GALICIA–GONZALEZ,
Defendant–Appellant.

No. 92–50491.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1993.

Decided June 28, 1993.

Celia M. Rumann, Federal Public Defenders of San Diego, Inc., San Diego, CA, for defendant-appellant Martin Francisco Galicia–Gonzalez.

Bruce R. Castetter and Robert O. Vicars, Jr., Asst. U.S. Attys., San Diego, CA, for plaintiff-appellee U.S.

Before: KOZINSKI, SUHRHEINRICH * and T.G. NELSON, Circuit Judges.

PER CURIAM:

Galicia–Gonzalez's first run-in with federal law was when he was convicted for importing aliens for immoral purposes. *See* 8 U.S.C. § 1328. After he served his sentence, the INS issued Galicia–Gonzalez (an undocumented alien) an order to show cause why he should not be deported. He waived his deportation hearing, conceded deportability and was deported on January 23, 1992, through port of entry El Paso, Texas. Back in Mexico, defendant headed West, then North back into the United States. Just a week after his deportation, an INS special agent stopped Galicia–Gonzalez in Vista, California, where he admitted to entering the United States illegally.

Defendant pled guilty to 8 U.S.C. § 1326, being present in the United States after a prior deportation. In his plea agreement, he reserved the right to appeal the denial of his motion to dismiss the indictment on the basis that his waiver of the right to appeal his deportation proceedings wasn't knowing. We must decide whether this waiver—and thus the deportation itself—was valid; and, if it was not, whether defendant has made a prima facie showing of prejudice under *United States v. Proa–Tovar*, 975 F.2d 592 (9th Cir.1992) (en banc).

## Discussion

■■■ A. "Deported," as the term is used in 8 U.S.C. § 1326, means "being deported according to law." *United States v.*

*Gasca–Kraft*, 522 F.2d 149, 152 (9th Cir.1975) (internal quotation marks omitted). Thus, proving a lawful prior deportation is part of the government's burden in a section 1326 case. As our later cases have held, however, a deportation is lawful even if the proceeding does not comply with every jot and tittle of the immigration laws. If the defendant was legally deportable and, despite the INS's errors, the proceeding "could not have yielded a different result," the deportation is valid for purposes of section 1326. *Proa–Tovar*, 975 F.2d at 595.

Defendant argues that his concession of deportability and waiver of a hearing is invalid because the file "does not provide a ... record from which a [reviewing] court may re-evaluate the validity of the underlying deportation in a later criminal proceeding." We do not agree. To prove the prior deportation, the government introduced a stipulation which showed defendant was advised of all his rights under the immigration laws. According to this document, defendant waived all those rights and conceded his deportability in exchange for the government's promise to release him from custody within fifteen days. Though Galicia–Gonzalez didn't sign the stipulation, his counsel did, along with a declaration that she fully explained the contents of the agreement to him and that he entered it with full knowledge. An immigration judge reviewed the stipulation and order to show cause, found Galicia–Gonzalez deportable, and entered his deportation order.

■■■ The stipulation shows Galicia–Gonzalez was advised of all relevant rights, waived them and conceded his deportability. As we said in an analogous context:

> In the absence of other evidence, the [administrative] records which assert that he did waive the rights must be presumed to be correct. [Defendant] has not carried his burden of proving the invalidity of these convictions.

---

* The Honorable Richard F. Suhrheinrich, United States Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

*United States v. Carroll,* 932 F.2d 823, 825 (9th Cir.1991). Thus, where the government introduces official records which on their face show a valid waiver of rights in connection with a deportation proceeding, the burden shifts to the defendant to come forward with evidence tending to prove the waiver was invalid. Defendant has not even alleged there was anything wrong with his deportation, *i.e.,* that his rights were improperly explained or that he was coerced into waiving them. The government's prima facie showing thus stands unchallenged and this satisfies the government's burden of showing a valid deportation for purposes of section 1326.

■ **B.** Defendant also argues that even if his waiver was valid, he didn't get everything to which he was entitled because the stipulation promised him some sort of hearing. Denial of a right to a hearing promised in the agreement would likely rise to the level of a "procedural error[ ] ... so fundamental that [it] may functionally deprive the alien of judicial review." *United States v. Mendoza–Lopez,* 481 U.S. 828, 839 n. 17, 107 S.Ct. 2148, 2155 n. 17, 95 L.Ed.2d 772 (1987). But we need not make that determination here, because defendant conceded his deportability in a valid waiver of his rights. Even if a hearing had been held, it would have accomplished nothing, because defendant had given up the game by conceding he was deportable. Defendant therefore cannot show prejudice under *Proa–Tovar.*

### Conclusion

The district court's denial of the motion to dismiss the indictment on the grounds of an invalid deportation is

**AFFIRMED.**