UNITED STATES of America, Plaintiff,

v.

Candelaria ORTIZ–DIAZ, Defendant.

No. CR–F 94–5018 EDP.

United States District Court,
E.D. California.

April 18, 1994.

10. If this is not the case, Area I may attempt to intervene in the Westlands litigation.

Jonathan B. Conklin, Asst. U.S. Atty., Fresno, CA, for plaintiff.

Martin Resendez–Guajardo, San Francisco, CA, for defendant.

## MEMORANDUM DECISION RE: DEFENDANT'S MOTION TO DISMISS INDICTMENT

PRICE, Senior District Judge.

### BACKGROUND

Defendant Ortiz–Diaz ("Defendant") is charged with violating 8 U.S.C. § 1326 (previously deported alien found in United States). Defendant moves to dismiss the indictment on the grounds that her deportation violated due process.

#### A. Defendant's Criminal History

Defendant entered the U.S. in 1980 and has resided here since that time. In 1982 she failed to appear for a judicial proceeding and a warrant issued for her arrest for petty theft. In 1984 Defendant was convicted in state court of possession of heroin for sale and served a one year term. In November 1992 Defendant pleaded guilty in federal court to structuring financial transactions in

violation of 31 U.S.C. § 5324(a)(3) and was sentenced to eight months imprisonment.

### B. Immigration Proceedings

In July 1987, upon completion of her state narcotics sentence, Defendant entered the custody of the INS. The INS commenced deportation proceedings, issuing an Order to Show Cause (OSC) alleging Defendant was deportable pursuant to 8 U.S.C. § 1251(a)(11) because of her 1984 narcotics conviction. In February 1989, an immigration judge ruled that Defendant, due to her legal troubles, was statutorily ineligible for suspension of deportation under 8 U.S.C. § 1254(a) and ordered her deported to Mexico. On January 10, 1989, Defendant voluntarily departed from the U.S. and returned the next day under a § 1182(d)(5) grant of parole. The INS granted parole to allow Defendant to apply for legalization under 8 C.F.R. § 245A; the application was ultimately denied in June 1993. In January 1993 the INS encountered Defendant serving her federal sentence and Defendant returned to INS custody. The INS ordered Defendant to appear for deportation November 1, 1993. Defendant responded that newly discovered evidence indicated her 1984 narcotics conviction had been dismissed, and the INS granted an extension of her deportation until November 19.

Defendant seized upon this reprieve to unleash a fusillade of legal maneuvers in a last-ditch attempt to avoid deportation. On November 8, Defendant appealed the June 1993 denial of her legalization application, and the INS agreed to stay deportation until the Legalization Appeals Unit (LAU) adjudicated her appeal. On November 18, Defendant moved the Board of Immigration Appeals to re-open deportation proceedings, citing the purported dismissal of her 1984 conviction. The motion to re-open remained pending at the time of Defendant's deportation in January 1994. On November 19, Defendant applied for an administrative stay of deportation pending the BIA's decision on her motion to re-open. The INS granted a stay of deportation until November 26 in order to investigate the alleged dismissal of Defendant's 1984 conviction. On November 24, Defendant sought a writ of habeas corpus and preliminary injunction in federal court to prevent deportation until the BIA ruled on her pending motion to re-open. In response, the INS proved that the 1984 conviction had never been dismissed.

Resigned to the fact that the conviction was valid and that she was ineligible for temporary residency, Defendant withdrew her appeal to the LAU on December 3. Judge Fern Smith denied the federal injunction in a January 3, 1994 order. Prior to that order, however, the industrious Defendant had filed on November 26 a petition in state court for an exotic "writ of audita querela" [1]. The state court denied the petition, stating that the writ was not available in California. On December 6, the INS denied Defendant's application for a stay of deportation. Defendant appealed Judge Smith's denial of her request for a preliminary injunction [2], and filed a motion with Judge Smith for a stay of deportation pending the appeal. Judge Smith, and later the Ninth Circuit, denied the stay. Defendant's struggle reached its nadir on January 19, 1994, when Defendant was finally deported to Mexico. On February 2, authorities found Defendant in the U.S. and charged her with violation of 8 U.S.C. § 1326.

### DISCUSSION

Because an alien may collaterally attack her initial deportation as a defense to a § 1326 violation, judicial resources must yet again be employed to canvass the morass that is Defendant's immigration record.

Defendant makes three arguments in support of dismissal of the indictment, each challenging the validity of the January 1994 deportation. First, the government cannot prosecute Defendant because the government never gave Defendant written notice of the termination of her 1989 parole, pursuant

---

1. A writ of audita querela is an historic writ invoked to set aside civil judgments. *See,* Black's Law Dictionary, 6th Ed. (1990).

2. The Ninth Circuit dismissed this appeal on March 9, 1994 upon the voluntary motion of both parties.

to 8 C.F.R. § 212(d)(2). Since her parole was never properly terminated, Defendant's re-entry was legal. Second, the government erroneously placed Defendant into deportation proceedings when, as a parolee applying for admission, she should have gone into exclusion proceedings. Third, Defendant was not subject to deportation because she is entitled to derivative citizenship as the daughter of a U.S. citizen.

The government responds that the issues surrounding the legality of the parole grant and subsequent deportation proceedings were fully litigated and decided adversely to Defendant in Defendant's habeas and preliminary injunction actions. Thus, the government argues, Defendant is collaterally estopped from raising this defense. Alternatively, the government contends that Defendant's case fails on the merits.

### A. Collateral Estoppel

Under the rule of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *U.S. v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379, 383 (1984). The party against whom estoppel will be used must have had a full and fair opportunity to litigate in the previous case, the issue must be sufficiently similar in both cases, and must have been essential to the judgment in the first action. 21 Fed.Proc. § 51:212 (1984); *U.S. v. Hernandez*, 572 F.2d 218, 220 (9th Cir.1978). "Offensive" collateral estoppel occurs when a plaintiff seeks to preclude a defendant from relitigating an issue the defendant previously litigated unsuccessfully in another action against a different party. *Mendoza*, 464 U.S. at 159 n. 4, 104 S.Ct. at 571–72 n. 4, 78 L.Ed.2d at 384 n. 4.

The government in this case contends that Defendant unsuccessfully litigated the issue of the 1989 parole grant in the Northern District habeas/preliminary injunction proceedings, and that Defendant is now collaterally estopped from raising this defense. The government in essence invokes "offensive" collateral estoppel, which this court has

broad discretion to apply. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651–52, 58 L.Ed.2d 552, 562 (1979). The government's claim is ill-considered for two reasons.

First, the issues are materially different in each case. In the Northern District, Defendant merely claimed that the 1989 parole grant nullified the 1987 OSC and deportation proceedings, such that the government could not deport her unless the INS issued a new OSC. Judge Smith ruled that the statute (8 U.S.C. § 1182(d)(5)) governing Defendant's parole did not require the INS to initiate new deportation proceedings. Here, Defendant reiterates her claim regarding the parole grant, but the substance of her argument is that the INS failed to properly notify her in writing of the termination of her parole. This new defense was not asserted by Defendant nor discussed by Judge Smith in the Northern District case.

Second, even if the issues were identical, the issue was not essential to the judgment in the first case. Judge Smith's task was to decide whether the INS abused its discretion in denying Defendant's application for a stay of deportation. The judge reached her conclusion that there was no abuse of discretion based in large part on the fact that Defendant waived the parole issue in prior proceedings. Thus, the determination of the issue on its merits was not essential to the judgment.

Accordingly, collateral estoppel is not appropriate here. The motion to dismiss must be decided on the merits. Each of Defendant's contentions will be considered in turn.

### B. Analysis on the Merits
#### 1. Failure to Properly Terminate Parole Grant

An alien may enter the U.S. under a grant of parole by the Attorney General. 8 U.S.C. § 1182(d)(5). Parole may be terminated in two ways: "automatic" or "on notice." 8 C.F.R. § 212.5(d). The government may terminate parole automatically without written notice to the alien if the alien departs from the U.S. or if the time for which parole was authorized expires. 8 C.F.R. § 212.-

5(d)(1). In all other cases, "upon accomplishment of the purpose for which parole was authorized ... parole shall be terminated upon written notice to the alien...." 8 C.F.R. § 212.5(d)(2). The Ninth Circuit, interpreting the 1979 version of § 212.5, has held that before a paroled alien can be lawfully expelled, the alien must receive written notice of parole termination. *U.S. v. Lagarda–Aguilar,* 617 F.2d 527, 528 (9th Cir.1980). If parole was not properly terminated, the deportation was invalid and the government may not prosecute an alien for re-entry under 8 U.S.C. § 1326. *Id.* at 527.

In this case, the government never provided written notice of parole termination to Defendant. The only issue, then, is whether the INS could terminate Defendant's parole automatically, as provided in 8 C.F.R. § 212.-5(d)(1), or only through the written notice provision of § 212.5(d)(2).

The "automatic termination" section states:

"Parole shall be automatically terminated without written notice ... at the expiration of the time for which parole was authorized...."

8 C.F.R. § 212.5(d)(1). The INS added this section in a 1982 amendment, although the agency did not state its reasons for doing so. *See,* 47 Fed.Reg. 30,044 (1982). It may well have been an efficiency measure, designed to avoid the time and expense of finding and serving aliens with written notice in situations where the alien should know his parole has expired. The "notice" section provides that parole is terminated by written notice "[i]n cases not covered by [automatic termination], upon accomplishment of the purpose for which parole was authorized...." 8 C.F.R. § 212.5(d)(2)(i). In Defendant's case, parole was authorized to allow her to apply for legalization under 8 C.F.R. § 245A. When Defendant withdrew her appeal of the denial of her application for legalization, "the time for which parole was authorized" had expired, and the INS could terminate it without written notice. The "notice" section does not apply here, since "the purpose for which parole was authorized", to gain legalization, could not be "accomplish[ed]", due to the INS's denial of Defendant's application.

Moreover, Defendant's reliance on *Lagarda–Aguilar* for a rule requiring written notice in all cases is misplaced, since that case involved interpretation of the 1979 version of § 212.5. While the 1979 law did not provide for automatic termination of parole, the 1993 version clearly does. Thus, Defendant's due process argument regarding the INS's failure to provide written notice of parole termination is without merit.

## 2. Lack of Written Notice Not Prejudicial

█ Alternatively, even if the "notice" provision applies and the INS erred in deporting Defendant without providing written notice of parole termination, such error does not allow Defendant to exclude her deportation as evidence in a § 1326 case. The Ninth Circuit has held that, in a § 1326 prosecution, a collateral attack on the underlying deportation fails where the alleged procedural defect in the deportation proceedings did not prejudice the alien. *U.S. v. Ortiz–Rivera,* 1 F.3d 763, 768 (9th Cir.1993); *U.S. v. Galicia–Gonzalez,* 997 F.2d 602, 603 (9th Cir. 1993); *U.S. v. Proa–Tovar,* 975 F.2d 592, 595 (9th Cir.1992). In other words, a defendant cannot defeat a § 1326 charge merely because his deportation proceeding "d[id] not comply with every jot and tittle of the immigration laws." *Galicia–Gonzalez,* 997 F.2d at 603. *Galicia–Gonzalez* and similar Ninth Circuit cases reasoned from *U.S. v. Mendoza–Lopez,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), which for the first time condoned collateral attacks on deportation proceedings in § 1326 cases. *Mendoza–Lopez* admonished that "if [§ 1326] envisions that a court may impose a criminal penalty for reentry after *any* deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been, the statute does not comport with the constitutional requirement of due process." 481 U.S. at 837, 107 S.Ct. at 2154–55, 95 L.Ed.2d at 782. The Court concluded that where defects in INS proceedings foreclose further review of the deportation order, alternative review must be made available to the alien before the INS decision may be used to establish an element of a subsequent criminal offense. *Id.* at 837–39, 107 S.Ct. at 2154–55, 95 L.Ed.2d at 782–83. The Court declined to

specifically enumerate the procedural errors which "are so fundamental" that they prohibit the use of the administrative determination in a criminal proceeding. *Id.* at 839 n. 17, 107 S.Ct. at 2155-56 n. 17, 95 L.Ed.2d at 783 n. 17.

Admittedly, these cases do not concern the defect alleged here, the failure to provide written notice of termination of parole prior to deportation. However, assuming the INS erred in Defendant's case, the error was not "fundamental" according to the principles embodied in the *Mendoza-Lopez* line of cases, and thus Defendant's challenge to her deportation must fail. The *Mendoza-Lopez* Court sought to protect a defendant's due process rights by insuring that decisions rendered in INS proceedings were subject to independent judicial review prior to being invoked as an element of a criminal offense. The Ninth Circuit subsequently held that an alleged defect in INS adjudication must have prejudiced the alien in his effort to avoid deportation for the deportation to be excluded from evidence in a § 1326 prosecution. *Proa-Tovar,* 975 F.2d at 595. The Defendant here was afforded four years of judicial review of her February 1989 deportation order, including appeals to the Legalization Appeals Unit, the Board of Immigration Appeals, Stanislaus County Superior Court, the U.S. District Court, and the Ninth Circuit Court of Appeals. If ever a defendant has been afforded due process, this Defendant surely has.

Despite four years of opportunity to do so, Defendant never once raised the parole "defect" at any stage of her proceedings. Even if she had, the parole issue would not have affected her ultimate deportation. Where a defendant is statutorily ineligible for relief from deportation, INS procedural errors are not prejudicial and thus the deportation remains a valid element of a § 1326 offense. *U.S. v. Villa-Fabela,* 882 F.2d 434, 440 (9th Cir.1989). Defendant had twice been convicted of serious felonies, and the INS had determined that she was statutorily precluded from remaining legally in the U.S. Assuming *arguendo* that the INS should have provided written notice of parole termination, the most that could have happened was that Defendant would have received a termination notice, and the INS would then have proceeded to deport her as it did in any event. Thus, Defendant was not prejudiced by the INS's failure to provide written notice of parole termination, and the prior deportation is valid as an element of the § 1326 offense.

Defendant's primary authority, *Lagarda-Aguilar,* discussed *supra,* although factually similar to her case does not dictate a different result. *Lagarda-Aguilar* implicitly based its holding on due process grounds. 617 F.2d at 528 (termination of parole should not be left to the "whim" of INS agents; written notice is a "safeguard" to the orderly administration of parole). Here, due process has emphatically been served. This is not a case where INS agents "terminated" a defenseless aliens's parole by muscling him to the border and shoving him across, as perhaps occurred in *Lagarda-Aguilar. See, Lagarda-Aguilar,* 617 F.2d at 527. Defendant, in all her vigorous efforts to defeat deportation, could not have simultaneously believed that she was still on parole status. Both Supreme Court and Ninth Circuit authority, decided long after *Lagarda-Aguilar,* invoke due process in requiring meaningful review of INS decisions which prejudice a defendant in a § 1326 prosecution. *See, e.g., Mendoza-Lopez, Proa-Tovar, supra.* Beyond that, however, a § 1326 defendant is not entitled to expunge a prior deportation because the INS failed to comply with every "jot and tittle" of the immigration laws. *Galicia-Gonzalez,* 997 F.2d at 603. Defendant had countless opportunities over four years to contest her deportation on the grounds asserted here. At some point, litigation over a given deportation must end. In Defendant's case, the end has arrived.

### 3. Failure to Commence Exclusion Proceedings

■ If the government terminates parole, the alien is restored to the status which he or she had prior to the grant of parole. 8 C.F.R. § 212.5(d)(2); 8 U.S.C. § 1182(d)(5).

Defendant insists that, after she came into INS custody in 1993, the INS should have placed her into new exclusion proceedings rather than completing the deportation proceedings commenced by the 1987 OSC. De-

740

fendant's argument is both bizarre and legally incorrect. Since deportation proceedings allow far more rights than exclusion proceedings, *Landon v. Plasencia*, 459 U.S. 21, 25–27, 103 S.Ct. 321, 325–26, 74 L.Ed.2d 21, 28 (1982), it is difficult to understand why Defendant prefers the latter. Regardless, the INS properly renewed deportation proceedings against Defendant. As noted above, the applicable statutes provide that upon return to custody, an alien is restored to the immigration status he held prior to the parole grant. Defendant was in deportation proceedings prior to her 1989 parole grant. Thus, when Defendant returned to INS custody in 1993 following her federal sentence, the INS correctly resumed deportation proceedings against her.

### 4. Defendant's Derivative Citizenship

██ A child born outside of the U.S. between December 24, 1952 and October 10, 1978 may attain derivative citizenship through his parents if one was a citizen and the other an alien. Charles Gordon & Stanley Mailman, *Immigration Law and Procedure*, § 93.03[5] (1993). The citizen parent must have been physically present in the United States, prior to the birth of the child, for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years. *Id.* Additionally, the child loses his citizenship unless he came to the U.S. prior to the age of 23 and after the age of 14, and was continuously present in the U.S., before attaining the age of 28, for at least 5 years. *Id.* Obviously, citizens of the U.S. are not subject to deportation proceedings.

As an initial matter, the legitimacy of this defense is placed in serious doubt by that fact that Defendant, in all her Herculean efforts to remain in the U.S., *never once* raised this issue, which would have instantly established her citizenship, in any prior immigration or court proceeding. In any event, Defendant offers no evidence that her father meets the statutory requirements of having lived in the U.S. for a total of ten years prior to Defendant's birth, at least five of which were after the father's fourteenth birthday. The only evidence proffered is Defendant's father's birth certificate, indicating he was born in the U.S. This is insufficient, and Defendant's claim must fail.

### CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss the indictment is hereby DENIED.