**UNITED STATES of America**

v.

**Miguel AQUINO–CHACON, Defendant.**

**No. CR 95–0426–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 4, 1995.

Helen F. Fahey, United States Attorney, Michael E. O'Hare, Special Assistant United States Attorney, Alexandria, Virginia, for U.S.

John Kiyonaga, Alexandria, Virginia, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This 8 U.S.C. § 1326(a) prosecution is before the Court on (i) defendant's motion to dismiss or quash the indictment on due process grounds and (ii) the government's motion in limine to exclude certain evidence. At issue is whether the Due Process Clause precludes prosecuting this defendant for illegal entry into the United States following deportation because certain statements on Immigration and Naturalization Service (INS) form I–294 led defendant to believe he could reenter the country without the Attorney General's permission five years after deportation. Because the form creates no due process concerns, defendant's motion must be denied. And because the government's motion is the obverse of the defendant's, it must be granted.

### I.

In May 1995, defendant was arrested by the police in Fairfax County Virginia. Because defendant appeared to be an alien, the Fairfax County police reported defendant's arrest to the INS. Files maintained by INS reflect that defendant is an alien who has been arrested and deported from the United States on three previous occasions, the most recent of which occurred on December 30, 1987.[1] The INS files also reflect that defendant did not obtain the Attorney General's consent to reenter this country prior to his Fairfax County arrest. Given this, INS agents sought and obtained a warrant for defendant's arrest, charging him with unlawful reentry into the United States following deportation, in violation of 8 U.S.C. § 1326(a). Defendant was ultimately indicted for this offense.

### II.

Defendant's current due process claim has evolved somewhat circuitously. Initially, the government filed a motion in limine to exclude certain evidence because it anticipated a "mistake of law" defense at trial. Specifically, the government sought the exclusion of evidence concerning defendant's knowledge or belief concerning the law relating to the legality of his reentry to the country. In support of its motion, the government correctly argued that settled authority foreclosed a "mistake of law" defense in a § 1326(a) prosecution. Specific intent is not an element of the crime of illegal entry following deportation, for "Congress did not include in the statute [§ 1326(a)] any language that specific intent is necessary for a conviction." *United States v. Espinoza–Leon*, 873 F.2d 743, 746 (4th Cir.), *cert. denied*, 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). Rather, "only general intent must be proven by the government in order to secure a conviction under § 1326." *Id.* Thus, in a prosecution under § 1326(a) for unlawful reentry after deportation, the government need not prove that the alien acted with specific intent to violate the law.[2] This principle, which accords with settled

---

1. From the undisputed record, it appears that defendant was also deported in 1985 from Houston, Texas, and again in 1986 from New Orleans, Louisiana.

2. Nor is there any doubt that Congress has the power to criminalize an alien's unauthorized return after deportation under § 1326(a) without proof of criminal intent. It is axiomatic that Congress' power to admit, exclude or regulate the admission of aliens is plenary. *See Pena–*

*Cabanillas v. United States*, 394 F.2d 785, 788 (9th Cir.1968). It follows, in this regard, that "where the peculiar nature and quality of the legislation requires an effective means of regulation, such legislation may dispense with the conventional requirement for criminal conduct, to wit, an awareness of some wrongdoing." *Id.* (citing *Morissette v. United States*, 342 U.S. 246, 251–256, 72 S.Ct. 240, 243–46, 96 L.Ed. 288 (1952)).

authority from other circuits as well,[3] renders irrelevant whether defendant mistook, misread or was unaware of § 1326. Accordingly, evidence to this effect would be irrelevant and thus inadmissible.

### III.

■ But this was not the end of the matter, for defendant responded by noting that he did not intend to raise a mistake of law defense. Instead, he stated through counsel that he intended to attack the lawfulness of his previous deportations on the ground that he was not advised that reentry without permission was forbidden. In defendant's view, the failure to so inform him rendered it impossible for the government to establish a necessary element of the § 1326(a) offense, namely a lawful deportation. This argument also fails.

■ To begin with, the Supreme Court has flatly rejected the proposition that a "lawful deportation" is an element of the § 1326(a) offense of unlawful entry after deportation. *United States v. Mendoza–Lopez,* 481 U.S. 828, 834–37, 107 S.Ct. 2148, 2153–54, 95 L.Ed.2d 772 (1987).[4] Further, the Supreme Court has made equally clear that a deportation is subject to collateral attack in a § 1326(a) prosecution only where the deportation proceeding was so deficient that its use as a predicate for a criminal prosecution would violate a defendant's due process rights. *Id.* Put another way, a deportation may serve as a predicate for a § 1326(a) prosecution unless defendant shows that the

deportation proceeding was fundamentally flawed and that defendant was prejudiced thereby.[5] This is an issue of law appropriately raised by way of a pretrial motion [6] and appropriately resolved by the court, not the jury.[7]

■ These principles, applied here, effectively scuttle defendant's claim that his various deportations were not lawful because he was not advised that re-entry without permission was unlawful. Even assuming, *arguendo,* that defendant was not told that reentry without permission was unlawful, that omission is without consequence in a subsequent § 1326(a) prosecution. Since a § 1326(a) violation is not a specific intent offense, it matters not that defendant was not advised that lawful reentry required permission or that he may have mistakenly thought his reentry was legal.[8] Nor is a deportation flawed, fundamentally or otherwise, merely because defendant was not warned that reentry without permission is a crime. Not surprisingly, courts confronting this issue have reached precisely this result. For example, in *United States v. Chavez–Huerto,* 972 F.2d 1087, 1089–90 (9th Cir. 1992), an Immigration judge omitted to advise a deportee that he could be convicted of crime if he later reentered this country. That omission, according to the Ninth Circuit, was not a fundamental flaw that invalidated the prior deportation or precluded its use as a predicate for a § 1326(a) prosecution. In sum, defendant's claim that he was not advised about reentry at the time of

---

**3.** *See, e.g., United States v. Ayala,* 35 F.3d 423, 426 (9th Cir.1994) (government need not allege specific intent under 8 U.S.C. § 1326); *United States v. Miranda–Enriquez,* 842 F.2d 1211 (10th Cir.1988) (same); *United States v. Hussein,* 675 F.2d 114 (6th Cir.1982) (same).

**4.** In support of his argument that a lawful deportation is an element of a § 1326(a) offense, defendant mistakenly relies on the Ninth Circuit's decision in *United States v. Galicia–Gonzalez,* 997 F.2d 602, 603 (1993). Yet, in *Galicia–Gonzalez* the Ninth Circuit relied for this proposition on its earlier decision in *United States v. Gasca–Kraft,* 522 F.2d 149, 152 (1975), a decision expressly overruled on this issue in *United States v. Mendoza–Lopez,* 481 U.S. 828, 834–35 n. 9, 107 S.Ct. 2148, 2153 n. 9, 95 L.Ed.2d 772 (1987).

**5.** *See also United States v. Leon–Leon,* 35 F.3d 1428, 1431 (9th Cir.1994); *United States v. Chavez–Huerto,* 972 F.2d 1087 (9th Cir.1992); *United States v. Proa–Tovar,* 975 F.2d 592, 594 (9th Cir.1992).

**6.** *See e.g. United States v. Holland,* 876 F.2d 1533, 1535 (11th Cir.1989); *United States v. Ortiz–Rivera,* 1 F.3d 763, 765 (9th Cir.1993).

**7.** *See United States v. Hernandez–Rojas,* 617 F.2d 533, 535 (9th Cir.), *cert. denied,* 449 U.S. 864, 101 S.Ct. 170, 66 L.Ed.2d 81 (1980); *see also United States v. Ibarra,* 3 F.3d 1333, 1336 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1327, 127 L.Ed.2d 675 (1994).

**8.** *See supra* notes 4 and 6 and accompanying text.

deportation affords him no basis to attack the deportation collaterally, nor does it afford him any basis to introduce any evidence to this effect at trial.

## IV.

■ Defendant's final and most recent claim shifts the focus somewhat from the deportation proceeding to the current § 1326(a) indictment. Specifically, he claims that the indictment offends due process because the language in INS form I–294 led him to believe that he could legally enter the United States after five years. The form language on which defendant relies states:

> Should you wish to return to the United States you *must* write this office or the American Consular Office nearest your residence abroad as to how to obtain permission to return after deportation. By law (Title 8 of United States Code, Section 1326) any deported person who within five years returns without permissions is guilty of a felony. If convicted he may be punished by imprisonment of not more than two years and/or a fine of not more than $1,000.00 (emphasis added).[9]

In support of his argument based on the form language, defendant cites *United States v. Pennsylvania Ind. Chem. Corp.*, 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973), which holds that due process precludes prosecution for conduct where a government regulation has affirmatively misled a defendant to believe that the conduct is lawful and defendant reasonably relies on the regulation.[10]

■ It is noteworthy that *Pennsylvania Ind. Chem. Corp.* concerns a government regulation, whereas this case involves language on a government form. A misleading regulation can give rise to a due process violation because a regulation carries with it the force of law. A government form, on the other hand, has no legal force, and a defect in the form cannot serve as the basis for a due process challenge. *See United States v. Ortiz–Perez*, 858 F.Supp. 11, 12 (D.R.I.1994) (citing *United States v. Perez–Torres*, 15 F.3d 403, 406 (5th Cir.1994).

Quite apart from that distinction, even if *Pennsylvania Ind. Chem. Corp.* were apposite authority here, defendant still could not prevail because he cannot demonstrate that he in fact relied on the form language and that his reliance was reasonable in the circumstances. Indeed, the record points persuasively to the conclusion that, far from relying on the form language, defendant ignored it entirely. He, in fact, returned to the United States without permission twice within five years after his 1987 deportation. Specifically, defendant was arrested in Yonkers, New York in 1990 and again in Buffalo, New York in 1991.[11] Defendant might argue that he knew he risked a felony conviction by returning in 1990 and 1991, but thought his later return was without risk. While con-

**9.** This language appeared in the Form I–294's issued to defendant on the occasion of his 1986 and 1987 deportations. Defendant was also deported in 1985. On that occasion, the form I–294 he was issued simply states in pertinent part, that "[b]y law (title 98 of the United States Code, Section 1326) any deported person who returns without permission is guilty of a felony."

The record does not disclose the reason for the defect in the form, but it may be attributable to 8 U.S.C. § 1182(a)(6)(B), which provides: "Any alien who ... has been arrested and deported ... and ... who seeks admission within 5 years of the date of such deportation ... is excludable, unless before the date of the alien's embarkation or reembarkation at a place outside the United States ... the Attorney General has consented to the alien's applying or reapplying for admission." *Id.*

**10.** In *Pennsylvania Ind. Chem. Corp.*, the defendant corporation claimed that an Army Corps of Engineers regulation caused it to believe its actions were lawful. *Id.* at 659–60, 93 S.Ct. at 1809–10. The Supreme Court remanded the case for the lower court to determine whether "there was in fact reliance and, if so, whether that reliance was reasonable under the circumstances...." *Id.* at 675, 93 S.Ct. at 1817.

**11.** From the record, it appears that defendant was fingerprinted at the time of his 1990 Yonkers arrest and those prints, according to an INS Forensic Document Laboratory ("FCL") Report dated August 3, 1995 match his fingerprints taken at the time of his arrest in this case. As for his 1991 Buffalo arrest, the record discloses that a signature of the person arrested at that time matches defendant's signature. *See* INS FC Report dated November 22, 1995.

The record does not indicate what action, if any, the government took against defendant after his 1990 and 1991 arrests.

ceivable, this argument is simply not persuasive. Far more plausible and hence convincing is that defendant never in fact relied on the form language and simply returned to this country without permission whenever it suited him.

But the absence of reliance in fact is not defendant's only obstacle. Even assuming defendant had relied on the form language, that reliance could not plausibly be termed reasonable. In the first place, the form unequivocally tells the reader that "should you wish to return to the United States you *must* write this office or the American Consular Office nearest your residence abroad as to how to obtain permission to return after deportation". (emphasis added) The requirement to obtain permission is mandatory and unqualified. To be sure, the next sentence misstates § 1326(a) by indicating that its proscription against return without permission applies only to aliens who return within five (5) years. But this misstatement does not modify or change the mandatory requirement for permission announced in the first sentence. Moreover, the language is ambiguous. An equally plausible (but also mistaken) reading of the form as a whole is that any return within five years is a felony, but returns after five years require permission. Yet another plausible meaning is that all returns require permission and that unpermitted returns within five years are felonies governed by § 1326(a), whereas as unpermitted returns more than five years after deportation are subject to some other provision, or sanction such exclusion or deportation. But in any event, the form's language references the statute itself, which, if read, plainly provides reasonable notice of the serious criminal consequences of reentry regardless of when the reentry occurs. Given this, it cannot reasonably be said that defendant did not receive fair notice that comports with due process.

In sum, defendant's due process argument fails because the defect was contained in a document with no legal force, because he did not in fact rely on the INS form language, and because it would not have been reasonable for him, based on the form, to conclude that reentry without permission within five (5) years was lawful.

The government's obverse motion in limine is therefore granted to the extent that defendant sought to offer evidence of a mistake of law or the misleading nature of the form. Should defendant wish to introduce evidence of this nature for any other purpose, counsel must first seek leave of Court to do so.

An appropriate order will issue.