UNITED STATES of America, Plaintiff,

v.

**Jose Juan GUITERREZ– ALBA, Defendant.**

**CR. No. 95–01182 DAF.**

United States District Court,
D. Hawaiʻi.

June 25, 1996.

Tom P. Sleisinger, Asst. U.S. Atty., Los Angeles, CA, for Plaintiff.

Bernardo A. Casas, Pro Se.

Alexander Silvert, Office of the Federal Public Defender, Honolulu, HI, for Jose Juan Gutierrez–Alba.

Omer G. Poirier, United States Attorneys Office, Honolulu, HI, for U.S.

### ORDER GRANTING GOVERNMENT'S MOTIONS IN LIMINE TO EXCLUDE EVIDENCE

DAVID ALAN EZRA, District Judge.

The court heard the Government's Motions in Limine on June 21, 1996. Assistant United States Attorney Omer Poirier appeared on behalf of Plaintiff United States of America (the "Government"); Assistant Public Defender Alexander Silvert, appeared on behalf of Defendant Jose Juan Guiterrez–Alba ("Defendant"). After reviewing the motions and the supporting, opposing and supplemental memoranda, the court GRANTS the Government's Motions in Limine to Exclude Evidence Regarding the Legality of Deportation and to Exclude Evidence Regarding Defendant's Receipt of Amnesty.

### BACKGROUND

On December 21, 1995, Defendant was indicted for unlawfully entering the United States after having been previously deported for a felony conviction (grand theft auto), in violation of 8 U.S.C. § 1326(b).

The felony conviction underlying his deportation involves automobile theft in Idaho. In 1987, Defendant told authorities that he was over 18 years of age, thus the court convicted and sentenced him as an adult for Grand Theft Auto. No juvenile proceedings were ever initiated. And to date, Defendant has not appealed his felony conviction.[1]

Following his conviction, a prison guard apparently learned that the Defendant was 17 years of age and reported this information to the Immigration and Naturalization Service prior to the deportation hearing. INS did not act on this unofficial "information" and proceeded to deport Defendant on two bases: (a) he had a valid felony conviction, and (b) he was an illegal alien who entered

1. Based upon his status as an adult, the Defendant was speedily deported to Mexico and served only a small part of his Idaho sentence. It was therefore in Defendant's best interest, as he then saw it, to lie to authorities and claim he was 18 years old.

the United States without inspection. Defendant has indicated that he intends to introduce evidence at trial showing that the criminal conviction cannot form the basis for deportation because the state court of Idaho that convicted him as an adult was not a court of competent jurisdiction. The instant motion in limine by the Government concerns the admissibility of evidence regarding the legality of Defendant's deportation at trial.

Also at the motions in limine hearing, Defendant indicated that as part of his defense at trial, he intended to introduce this evidence establishing that he had been granted amnesty, albeit illegally, to remain in the United States. The Government objects to the introduction of this evidence as irrelevant to the charges at hand. The court will treat the admissibility of amnesty evidence as a separate motion in limine for the purposes of clarity and order.

## DISCUSSION

### A. Motion in Limine No. 1

The Government moves in limine to exclude evidence regarding the propriety of Defendant's deportation. It makes two arguments for exclusion. First, the Government argues the lawfulness of deportation is not an element of an 8 U.S.C. § 1326 prosecution. Second, it maintains that evidence on this issue is essentially a collateral attack on the validity of his prior deportation, which is a matter for the court, not for the jury.

Defendant cites *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) and its progeny for the proposition that the lawfulness of a prior deportation is an element of a section 1326 offense. *See, i.e., United States v. Ibarra*, 3 F.3d 1333, 1334–1335 (9th Cir.1993), *cert. de-*

*nied*, 510 U.S. 1205, 114 S.Ct. 1327, 127 L.Ed.2d 675 (1994). Defendant claims that he does not intend to attack the validity of the conviction itself, but rather INS's dependency on that conviction. Defendant contends that this matter presents a mixed question of law and fact which must be submitted to the jury for consideration. *See United States v. Gaudin*, ⸺ U.S. ⸺, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995).

■ 8 U.S.C. § 1326 states in relevant part:

[A]ny alien who (1) has been arrested and deported or excluded and deported, and thereafter, (2) enters, attempts to enter, or is at any time found in, the United States ... shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326(a) (1996). The elements of the offense of unlawful reentry following deportation are (1) that defendant was an alien, (2) that defendant was deported, and (3) that he thereafter reentered the United States without permission. *United States v. Barragan–Cepeda*, 29 F.3d 1378 (9th Cir.1994).

■ The first question this court must decide here is whether lawful deportation is an element of a section 1326 offense. The court begins with the Supreme Court's decision in *Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) as a starting point for this discussion. In that case, the Supreme Court[2] flatly rejected the proposition that a "lawful deportation" is an element of the § 1326(a) offense of unlawful entry after deportation. *Mendoza–Lopez*, 481 U.S. at 834–37, 107 S.Ct. at 2152–55; *see United States v. Aquino–Chacon*, 905 F.Supp. 351, 353 (E.D.Va.1995). The Supreme Court conclusively held, "[t]he text

---

**2.** The Supreme Court addressed the question of whether lawful deportation is an element of a section 1326 offense to resolve a conflict between the circuit courts.

The Fifth and the Tenth Circuits held that an alien may not attack the validity of a prior deportation order in a section 1326 criminal action. *See United States v. Gonzalez–Parra*, 438 F.2d 694 (5th Cir.), *cert. denied*, 402 U.S. 1010, 91 S.Ct. 2196, 29 L.Ed.2d 433 (1971); *Arriaga–Ramirez v. United States*, 325 F.2d 857 (10th Cir.1963).

The Courts of Appeals for the Third, Seventh, and Ninth Circuits disagreed, reading the word

"deported" in 8 U.S.C. § 1326 as meaning "deported according to law." *See United States v. Bowles*, 331 F.2d 742, 749 (3d Cir.1964); *United States v. Heikkinen*, 240 F.2d 94, 99 (7th Cir. 1957), *rev'd on other grounds*, 355 U.S. 273, 78 S.Ct. 299, 2 L.Ed.2d 264 (1958); *United States v. Gasca–Kraft*, 522 F.2d 149, 152 (9th Cir.1975).

The Supreme Court rejected the latter view as unsupported by the language of the statute and the legislative history therein. *Mendoza–Lopez*, 481 U.S. at 835–837 and n. 9, 107 S.Ct. at 2153–55 and n. 9.

and background of § 1326 [ ] indicates no congressional intent to sanction challenges to deportation orders in proceedings under § 1326." *Mendoza–Lopez,* 481 U.S. at 837, 107 S.Ct. at 2154. The Supreme Court made a limited exception, however, to allow the validity of the deportation order to be contestable in a section 1326 prosecution where the deportation proceeding violates due process by effectively eliminating the right of the alien to obtain judicial review. *Id.* at 839, 107 S.Ct. at 2155–56.

A plain reading of the statute supports the *Mendoza–Lopez* holding. 8 U.S.C. § 1326(a) makes it crime to reenter the country after deportation; it does not, on its face, limit criminal sanctions only to those situations where the underlying deportation is lawful. *See Mendoza–Lopez,* 481 U.S. at 834–35, 107 S.Ct. at 2152–53.

There is murky language, however, in a 1993 Ninth Circuit opinion that seems to imply that the Ninth Circuit may require lawful deportation as an element of the offense. *See Ibarra,* 3 F.3d at 1334. The brief mention of the "lawfulness of deportation" in *Ibarra* appears to be non-binding dicta and is of little precedential value in this case, especially where the actual holding of *Ibarra* is directly contrary to Defendant's position here. Also, the court notes that *Ibarra* cites pre-*Mendoza–Lopez* case law which may no longer be valid for that proposition.[3]

Based on the statute and the binding Supreme Court precedent in *Mendoza–Lopez,* the court concludes that "an unlawful deportation" is not an element of a section 1326 prosecution. 8 U.S.C. § 1326 only requires that the defendant have been deported; despite the questionable language in *Ibarra,* the court declines to construe that statute as requiring "lawful deportation." The court therefore precludes Defendant from introducing evidence on the legality of the underlying deportation order as a matter of right to disprove an element of the crime.

The court must next determine whether Defendant should be allowed to introduce evidence regarding the legality of deportation on due process grounds. *See Mendoza–Lopez,* 481 U.S. at 837–839, 107 S.Ct. at 2154–56. The Supreme Court made clear that a deportation is subject to collateral attack in a section 1326(a) prosecution only where the deportation proceeding was so deficient that its use as a predicate for a criminal prosecution would violate a defendant's due process rights. *Id.* To collaterally attack a deportation order, Defendant must show that the deportation proceeding was so fundamentally flawed as to effectively foreclose judicial review. *United States v. Contreras,* 63 F.3d 852, 856 (1995). Also, in *Aquino–Chacon,* the court held that the validity of the deportation order is a question of law appropriately resolved by the court, not the jury. 905 F.Supp. at 353.

In *Contreras,* the Ninth Circuit indicated that a violation of INS procedure or the defendant's rights under immigration law, does not in and of itself give the defendant the right to collaterally attack his sentence. 63 F.3d at 856. He must show that he was effectively deprived of his right to judicial review and that he was prejudiced as a result of the violation. *Contreras,* 63 F.3d at 856–57. In *Contreras,* the court found no due process violation even though (a) the court explained his eligibility of relief from deportation in a group hearing, (b) the Government failed to translate certain off-the-record discussions between the immigration judge and INS counsel into Spanish, and (c) the defendant was deprived of his right to an in-person deportation hearing. *Id.* The Ninth Circuit agreed with the district court determination that these procedural deficiencies, separately or in sum, could not sustain a collateral attack on the deportation order because Defendant was not deprived of judicial review. *Id.* at 857.

In *Ibarra,* the district court granted the Government's motion in limine to exclude a

---

**3.** The *Ibarra* court cites *United States v. Gasca–Kraft,* 522 F.2d 149, 152 (9th Cir.1975) for the proposition that in order to convict a defendant for a violation of § 1326, the prior deportation must have been "lawful." 3 F.3d at 1334. The Supreme Court ruling in *Mendoza–Lopez* appears to have overruled *Gasca–Kraft* and other Third and Seventh Circuit opinions insofar as they interpreted the section 1326 statute as containing a "lawful deportation" element. *See* 481 U.S. at 837, 107 S.Ct. at 2154.

collateral attack of the deportation at trial where the district court had earlier rejected Ibarra's argument that the deportation was unlawful, and where it held that there were no factual issues in dispute regarding the prior deportation. *Id.* The Ninth Circuit affirmed that ruling, placing emphasis on the fact that the legality of the prior deportation was a legal matter on which Ibarra had already made a record. *Id.*

In the instant case, Defendant was 17 years old at the time of his deportation proceedings, and thus was technically a "juvenile" under the Federal Juvenile Delinquency Act (FJDA), 18 U.S.C. § 5031. His collateral attack of the deportation order is based on his contention that the INS erroneously used the felony conviction as a basis for deportation in direct violation of INS regulations that require a conviction by a court of *competent jurisdiction. See* 8 C.F.R. 242.2(b).

Defendant argues that the State Court of Idaho was not a court of competent jurisdiction because (a) that court does not adjudicate juvenile matters, and (b) the court did not hold a hearing to certify Defendant as an adult. Defendant claims that had he been treated as a juvenile, the immigration judge could have granted him voluntary departure, thus mitigating the consequences of his reentry into the United States.[4] The court disagrees.

First, the court notes that Defendant had full and fair opportunity to appeal both his felony conviction and the deportation order and he chose to waive both. Defendant expressly waived his right to appeal the immigration judge's deportation order at the December 17, 1987 deportation hearing. *See* Transcript of Deportation Hearing, attached to Government's Reply Memorandum, at 30–31. Also dispositive is the fact that the felony conviction remains unchallenged to this day, despite the fact that Defendant could have filed a direct appeal or a motion for state habeas relief. Therefore, the court finds that Defendant was not deprived of his right to judicial review.

Second, the court notes that even assuming arguendo that the immigration judge's failure to consider Defendant's juvenile status violated INS regulations, this violation neither impacted the Defendant's right to judicial review nor prejudiced him in any way since he would have been deported regardless. The court notes that the grand theft auto conviction is a valid conviction for the purposes of deportation unless and until Defendant successfully contests it through the proper channels. Thus, the immigration judge's reliance on that conviction was not improper.

 However, even if the felony conviction was removed as a basis for deportation, Defendant's illegal entry into the country provides an alternative, unchallenged basis for valid deportation. Moreover, contrary to Defendant's assertion, he would not have been eligible for voluntary departure minus the criminal conviction, because voluntary departure requires a showing of good moral character—a criterion Defendant cannot meet.[5] *See Rashtabadi v. INS,* 23 F.3d 1562,

---

4. Because the felony conviction was accepted as a basis for deportation, the immigration judge had no discretion but to order that he be deported without any consideration of the option for voluntary departure.

5. A petitioner who seeks voluntary departure under 8 U.S.C. § 1254(e) has a two part burden. He must first establish his statutory eligibility for that relief and then show that he is entitled to a favorable exercise of agency discretion. *Rashtabadi v. INS,* 23 F.3d 1562, 1571 (9th Cir.1994) (citations omitted). The statute provides that in order to be eligible for voluntary departure an alien must "establish ... that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure ..." 8 U.S.C. § 1254(e)(1).

8 U.S.C. § 1101(f)(3) and 8 U.S.C. § 1182(a)(9) state that no person shall be regarded as a person of good moral character who admits the commission of an offense during the statutory five-year period.

Here even if the Defendant had not been *convicted* of grand theft auto, that he admitted to acts constituting the essential elements of grand theft auto precludes him from being found a person of good moral character. *See* 8 U.S.C. § 1101(f)(3) and 8 U.S.C. § 1182(a)(9).

In his supplemental memorandum of law, Defendant argues that Defendant's admission to the elements of grand theft in adult court cannot be used in the determination of moral character because the admission was made in conjunction with the allegedly invalid conviction in Idaho state court. In support Defendant cites *Matter of*

1571 (9th Cir.1994). Under these facts, the court finds that a direct appeal of the deportation order could not have yielded a different result. *See United States v. Proa–Tovar*, 975 F.2d 592, 595 (9th Cir.1992) (fact that immigration judge did not punctiliously follow the law and regulations regarding direct appeals made no legal difference because the defendant would have been deported anyway). Since Defendant could not have qualified for voluntary departure, Defendant cannot show that he was prejudiced by the INS's failure to consider his juvenile status. Without evidence that he was deprived of his right to judicial review or that he was prejudiced by the immigration judge's failure to punctiliously follow INS regulation, the court finds no basis to allow Defendant to collaterally attack the deportation order at trial. Such evidence is simply not relevant to the instant trial and its probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues. *See* Fed.R.Evid. 401, 403. Accordingly, the court GRANTS the Government's Motion in Limine to Exclude Evidence regarding the Propriety of Defendant's Deportation.

### B. *Motion in Limine No. 2*

■ At the June 21, 1996 hearing, Defendant advised the Government that it intended to argue at trial that the Defendant's receipt of amnesty pursuant to 8 U.S.C. § 1255(a) constitutes a defense to the charge of reentering or "being found in" the United States after deportation. Defendant submits that because he was granted amnesty, even though perhaps wrongfully obtained,[6] until and unless his grant of amnesty is rescinded, Defendant cannot be tried for having reentered the United States after deportation.

The Government moves in limine to exclude the amnesty evidence as irrelevant to the instant prosecution under section 1326. The Government contends that the fact that the defendant had obtained authorization to be in the United States is irrelevant here, because conviction under this statute which prohibits re-entry after deportation does not require that Defendant's presence in the United States be unlawful. *See, i.e., United States v. Ramos–Quirarte*, 935 F.2d 162 (9th Cir.1991) (special agricultural worker status allowing defendant temporary residence not defense to prosecution for re-entry after deportation). Furthermore, the Government argues that a grant of amnesty does not shield Defendant from criminal prosecution. *United States v. Zalman*, 870 F.2d 1047, 1052 (6th Cir.1989).

Conviction under 8 U.S.C. § 1326 requires that Defendant: (a) is an alien; (b) had been arrested and deported or excluded and deported; and thereafter (c) enters, attempts to enter or is at any time found in, the United States. 8 U.S.C. § 1326(a). The statute makes two exceptions to prosecution for re-entry after deportation: an alien who

---

*Winter*, 12 I & N Dec. 638, 642 (BIA 1968) which states that a plea of guilty in a criminal proceeding is "insufficient admission for excludability purposes where the conviction was followed by pardon or expungement, or by a timely judicial recommendation against deportation." *Id.* (internal citations omitted). Defendant's reliance on *Winter* is misplaced.

In this case, the admission to the elements of the crime was presumably part of the plea agreement for the grand theft auto conviction. There is no indication that Defendant was compelled or coerced into making the admission. Moreover, there was no pardon, expungement, or judicial recommendation against deportation. Unlike in *Winter* which applies to convictions that were pardoned or expunged, 12 I & N Dec. at 642, Defendant here does not contest "the validity of the conviction itself, but rather the dependency of the INS upon that conviction to order his deportation in violation of their own statutes and regulations." *See* Defendant's Response, at 2.

Defendant's only basis for urging the court to disregard the admission is his supposition that the immigration judge should have disregarded the felony conviction as being from a court without competent jurisdiction. Defendant's argument is too attenuated, for it relies upon the court making a series of unsubstantiated assumptions regarding his validity of conviction. The court finds that the *Winter* rule directing against the use of an admission related to a conviction that was pardoned or expunged is inapplicable in this case where, at best, the state appellate courts in Idaho may overturn the decision *at a future date.* Thus, here the court finds that Defendant's admission to the elements of grand theft auto defeats his eligibility for voluntary departure. *See* 8 U.S.C. § 1101(f)(3) and 8 U.S.C. § 1182(a)(9).

**6.** It is curious that Defendant seeks to rely on the grant of amnesty which was obtained on yet another lie.

would otherwise be prosecuted under this statute can avoid criminal penalties by showing that (a) "prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission" or (b) advance consent was not required under the statutes regulating immigration and nationality. *Id.* The fact that an alien obtains temporary residence status *after* his return to the United States, however, is in no way a defense to the charge that his return itself was illegal under section 1326. *See Ramos–Quirarte,* 935 F.2d at 163 (emphasis in original) (Special Agricultural Worker status obtained after illegal re-entry not preclude section 1326 prosecution).

Here, the court rejects Defendant's contention that amnesty constitute "permission of the Attorney General of the United States to re-enter the United States." The plain language of the statute indicates that such "permission must be obtained prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory," 8 U.S.C. § 1326(a), not after he has illegally crossed the border.

Here it appears that Defendant reentered illegally and then had his status adjusted to that of an alien lawfully admitted for permanent residence pursuant to 8 U.S.C. § 1255(a).[7] It makes no difference that Defendant received a subsequent grant of amnesty for temporary residence in the United States. What is relevant to this proceeding is Defendant's status at the time of entry. Plaintiff's suggestion that the grant of amnesty under 8 U.S.C. § 1255(a) can be construed as permission to re-enter the United States, thereby bringing Defendant within the section 1326 exception, is completely unsubstantiated. Furthermore, the court notes that the amnesty provision does not directly

or by inference shield aliens from criminal prosecution. *Zalman,* 870 F.2d at 1052.

As Defendant's adjustment to temporary residence status pursuant to 8 U.S.C. § 1255(a) does not negate any of the elements that the Government must prove and section 1255(a) does not purport to grant amnesty with respect to criminal prosecutions, such as the one at hand, the court finds that Defendant's proposed amnesty evidence is irrelevant to the charges here. *See* Fed. R.Evid. 401. Accordingly, the court GRANTS Defendant's Motion in Limine to Exclude Evidence Regarding Defendant's Receipt of Amnesty pursuant to section 1255(a).

## CONCLUSION

For the reasons stated above, the court GRANTS the Government's Motions in Limine to Exclude Evidence Regarding the Legality of Deportation and to Exclude Evidence Regarding Defendant's Receipt of Amnesty.

IT IS SO ORDERED.

---

7. 8 U.S.C. § 1255(a) provides for an adjustment of status of certain entrants before January 1, 1982, to that of persons admitted for permanent residence. *See* 8 U.S.C. § 1255(a) (1996). The term "adjustment of status" necessarily implies that the status was previously different. Under the facts in this case, the court deduces that

while Defendant may have subsequently obtained relief under section 1255(a), his initial entry into the United States was illegal. As such, Defendant is subject to prosecution for illegal re-entry after deportation regardless of his current residency status.