# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOEL JONATHAN RAM,
                            *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,
                            *Respondent.*

No. 05-71190

Agency No.
A41-812-914

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 16, 2008*
San Francisco, California

Filed June 26, 2008

Before: Stephen S. Trott and Sidney R. Thomas,
Circuit Judges, and Michael R. Hogan,** District Judge.

Opinion by Judge Trott

---

*The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Michael R. Hogan, United States District Judge for the District of Oregon, sitting by designation.

## COUNSEL

Ajai Mathew, Law Office of Manpreet Singh Gahra, Berkeley, California, for the petitioner.

Nancy E. Friedman, U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

TROTT, Circuit Judge:

Joel Jonathan Ram petitions for review of the Board of Immigration Appeals' ("BIA") decision that he is removable because he was convicted of (1) an aggravated felony and (2) a controlled substance violation. The BIA determined also that Ram's hearing before an Immigration Judge ("IJ") afforded him adequate due process. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(D) and conclude that Ram was denied due process and his statutory right to counsel. Because we conclude also that Ram was prejudiced by the denial, we grant his petition for review and remand to the BIA with instructions to order a new hearing before an IJ. We need not reach the remainder of Ram's claims.

## I.  BACKGROUND

In the original Notice To Appear ("NTA"), the Department of Homeland Security ("DHS") charged Ram with being deportable under 8 U.S.C. § 1227(a)(2)(B)(i) for having been convicted of a controlled substance violation.

At his first hearing on July 12, 2004, Ram was informed by a pre-recorded statement of his rights, including the right to be represented by an attorney during the removal proceedings as well as the right to deny the charges against him. The IJ then granted Ram's request for a continuance in order for him to meet with an attorney.

Ram's second hearing was held August 12, 2004. It began:

  Q.   Your hearing was set over until today in order
       for you to obtain the services of an attorney.
       Have you done that?

  A.   No. No.

Q. Okay. Well, how do you — are you ready to proceed with your case and enter pleadings?

A. Yes.

The IJ then informed Ram that the DHS had filed an additional charge of removability under 8 U.S.C. § 1227(a)(2)(A)(iii) on the ground that he had been convicted of the aggravated felony of trafficking in a controlled substance. The IJ told Ram:

> [This new charge is] an aggravated felony. If that charge is sustained, you won't have any relief. If the [8 U.S.C. § 1227(a)(2)(B)(i)] charge is simply there, you would have relief in the form of cancellation of removal. Since you . . . just received this, I will give you a continuance to prepare to answer it, to see if you can get an attorney if that's what you would like to do.

Ram's third hearing was held August 25, 2004. It began by the IJ asking,

> Q. Sir, your case was originally set over because you wanted time to get an attorney. It was then set over so you could prepare to answer the additional charges. Are you ready to proceed with your case . . . ?
>
> A. Yes, Your Honor.

The IJ then opened the hearing and inquired whether Ram was convicted (1) of possession of cocaine base in violation of CAL. HEALTH & SAFETY CODE § 11350(a) and (2) of transportation or sale of cocaine base in violation of CAL. HEALTH & SAFETY CODE § 11352. To both questions, Ram answered, "Yes, Your Honor." The IJ then explained §§ 1227(a)(2)(A)(iii) and (B)(i) regarding eligibility for

removal and asked Ram if he agreed he could be removed from the United States on each charge. Ram again answered, "Yes, Your Honor."

Two problems then arose. First, Ram told the IJ that as of 1989 or 1990, his father was a citizen of the United States. Ram indicated he was five or six when his father became a citizen. Moreover, his mother was a "residential" since " '80 - - '88." This revelation caused the IJ to consider the Child Citizenship Act of 2000, 8 U.S.C. § 1431. However, the IJ was not certain of the effective date of the Act: "I want to say it's the 20th. Isn't it?" Government's counsel was unsure: "I'd like to say it's February 14, 2001," to which the IJ said, "I want to say the 20th for some reason." Then the government switched to the effective date of February 27, 2001 for those not yet 18. Based on this exchange, the IJ told Ram, "You missed [eligibility for citizenship under the Child Citizenship Act of 2000] by a couple of weeks."

The second problem was that the government did not have in its possession documents evincing the alleged conviction, so the IJ suspended his oral order of removal until the documents could be submitted.

At the next hearing, however, when the papers were available, the IJ found them "confusing," and questioned Ram to try to resolve an ambiguity on the face of the documents. Somewhat vaguely, Ram disputed the nature of the charge to which he plead pursuant to a deal, but to no avail. The IJ ordered him removed on the basis of two charges: (1) that he had been convicted of a controlled substance offense, and (2) that he had been convicted of an aggravated felony, i.e., drug trafficking.

## II.  DISCUSSION

Questions of law and due process challenges to removal orders are reviewed de novo. *Colmenar v. INS*, 210 F.3d 967,

971 (9th Cir. 2000). "The Fifth Amendment guarantees due process in deportation proceedings." *Id.* It is appropriate to grant a petition for rehearing on due process grounds where "the proceeding was 'so fundamentally unfair that the alien was prevented from reasonably presenting his case.' " *Id.* (quoting *Platero-Cortez v. INS*, 804 F.2d 1127, 1132 (9th Cir. 1986). Thus, in order to prevail upon his due process claims, Ram must establish that: (1) he has been denied due process and (2) the denial of his due process rights prejudiced him. *Id.*

**[1]** "Although there is no Sixth Amendment right to counsel in an immigration hearing, Congress has recognized it among the rights stemming from the Fifth Amendment guarantee of due process that adhere to individuals that are the subject of removal proceedings." *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004); *see also* 8 U.S.C. §§ 1229a(b)(4)(A), 1362. "Although IJs may not be required to undertake Herculean efforts to afford the right to counsel, at a minimum they must [(1)] inquire whether the petitioner wishes counsel, [(2)] determine a reasonable period for obtaining counsel, and [(3)] assess whether any waiver of counsel is knowing and voluntary." *Biwot v. Gonzales*, 403 F.3d 1094, 1100 (9th Cir. 2005); *see also Tawadrus*, 364 F.3d at 1103.

**[2]** The first and second of these requirements were met here. However, we conclude that the third element was not. "In order for a waiver to be valid, an IJ must generally: (1) inquire specifically as to whether petitioner wishes to continue without a lawyer; and (2) receive a knowing and voluntary affirmative response." *Tawadrus*, 364 F.3d at 1103 (internal citations omitted). "If the petitioner does not affirmatively waive his right to counsel, the IJ must inquire whether there is good cause to grant petitioner more time to obtain counsel." *Biwot*, 403 F.3d at 1100.

The government argues that Ram was provided due process of law notwithstanding the absence of counsel because he

does not "point to anything that would indicate he was unso-phisticated, incompetent, or in any way confused," nor does the record indicate "he was 'misled' or otherwise not informed about the correct procedures." This argument misses the point that, even for the most competent alien, the IJ has an affirmative duty to assess whether any waiver of counsel is knowing and voluntary. *Id.*

**[3]** Our precedent illustrates that Ram cannot be said to have waived his right to counsel. "The IJ neither asked [Ram] whether he wished to proceed without an attorney nor deter-mined whether there was good cause to grant [him] more time to obtain counsel." *Id.* Furthermore, "at no time did [the IJ] direct any questions to [Ram] concerning the implications of" proceeding without an attorney. *Tawadrus*, 364 F.3d at 1104. Making these inquiries is not a Herculean effort, and by not doing so, the IJ failed adequately to assess whether the waiver by Ram was knowing and voluntary. *See id.* at 1103-05; *Biwot*, 403 F.3d at 1100.

**[4]** It is important to clarify that this affirmative duty does not and should not entitle or allow a petitioner to "game the system" or to improperly delay the judgment day by asking for endless continuances or by failing to be diligent in the pur-suit of representation. Quite to the contrary, "[a]bsent a show-ing of clear abuse, we typically do not disturb an IJ's discretionary decision not to continue a hearing." *Biwot*, 403 F.3d at 1099. However, in order to proceed without counsel, an IJ must comply with the requirements of *Tawadrus*, and determine, in the absence of a showing of good cause for an additional continuance, that the right to counsel has been for-feited.

**[5]** To demonstrate prejudice, and thus a denial of due pro-cess, Ram must show that the denial of his right to counsel potentially affected the outcome of the proceedings. *Baltazar-Alcazar v. INS*, 386 F.3d 940, 947 (9th Cir. 2004). In making this assessment, we acknowledge the difficult situation in

which Ram found himself. We said in *Biwot*, "[t]he high stakes of a removal proceeding and the maze of immigration rules and regulations make evident the necessity of the right to counsel. The proliferation of immigration laws and regulations has aptly been called a labyrinth that only a lawyer could navigate." 403 F.3d at 1098.

[6] Ram's initial perfunctory responses to the IJ's questions about his criminal convictions demonstrate he did not understand either his role in the proceedings or that the government had the burden of proving he was convicted of an aggravated felony or a controlled substance violation. Moreover, the documentary evidence eventually produced with respect to Ram's "convictions" is far from clear. His counsel now argues that "an attorney would have helped Ram understand his criminal record as well as his legal rights and evidentiary burden, so that he would not have admitted to allegations and charges that were spurious and that the DHS could not substantiate with proper documentation." Counsel plausibly says also that "the most that can be proven from the record is that Ram was convicted for narcotics possession . . . ," and that he is not an aggravated felon, and thus, is eligible for cancellation of removal, asylum, and withholding of removal. As in *Biwot*, "[w]ith an attorney, he would not have been forced . . . to present a case with no evidence [and virtually no argument, and to] answer the IJ's inquiries without any idea of their legal significance." *Id.* at 1100.

[7] Thus, we conclude that the proceedings' outcome was potentially affected by denial of his right to counsel, and Ram was thus prejudiced thereby.[1] *Baltazar-Alcazar*, 386 F.3d at 948.

---

[1]Because we conclude that Ram's due process rights were violated, we need not reach the question, which was neither briefed nor argued, of whether the violation of the statutory or regulatory right to counsel requires a showing of prejudice. *Biwot*, 403 F.3d at 1100; *Baltazar-Alcazar*, 386 F.3d at 947; *United States v. Ahumada-Aguilar*, 295 F.3d 943, 950 (9th Cir. 2002).

## III. POSTSCRIPT

"We have reiterated many times that an alien cannot appear pro se without a knowing and voluntary waiver of the right to counsel." *Biwot*, 403 F.3d at 1100 (citing *Velasquez Espinosa v. INS*, 404 F.2d 544, 546 (9th Cir. 1968)). Ram's fatal hearing occurred on August 25, 2004, four months after our opinion in *Tawadrus*, and *thirty-six* years after our opinion in *Velasquez Espinosa*. Granting a petition and starting the process anew is hardly an efficient way to process these matters. We would not be required to do so if all IJs were made aware of their due process responsibilities with respect to the right to counsel. We respectfully hope this opinion will contribute to their awareness of these important requirements.

**Petition for Review GRANTED and REMANDED to the BIA with instructions to order a new removal hearing before an IJ.**