**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

v.

OMAR RODRIGUEZ-OCAMPO,
　　　　　*Defendant-Appellant.*

No. 10-50528

D.C. No.
3:10-cr-02567-JLS-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted
December 8, 2011—Pasadena, California

Filed December 30, 2011

Before: Betty B. Fletcher, Barry G. Silverman, and
Kim McLane Wardlaw, Circuit Judges.

Per Curiam Opinion

## COUNSEL

Trenton C. Packer, San Diego, California, for appellant Omar Rodriguez-Ocampo.

Harold W. Chun, Assistant United States Attorney, San Diego, California, for appellee United States of America.

## OPINION

PER CURIAM:

Omar Rodriguez-Ocampo was convicted of two counts of illegal entry under 8 U.S.C. § 1325. He appeals the district court's application of a sixteen-level sentencing enhancement pursuant to U.S.S.G. § 2L1.2(b), which applies "[i]f the defendant previously was deported, or unlawfully remained in the United States" after being convicted of certain offenses. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C.

§ 3742, and we vacate the sentence and remand for resentencing.

## I.

Omar Rodriguez-Ocampo is a Mexican national. He was first removed from the United States in September 2000 via a "stipulated removal" order after pleading no contest to assault III, a felony, in Oregon. The government concedes that, in this case, the removal order was invalid because the stipulated removal process violated Rodriguez-Ocampo's due process rights under our decision in *United States v. Ramos*, 623 F.3d 672 (9th Cir. 2010), *cert. denied*, 132 S. Ct. 240 (2011).

After his initial removal pursuant to the stipulated order, Rodriguez-Ocampo repeatedly returned to the United States to be with his wife and children. He was removed via reinstatement of the stipulated order on four occasions, convicted of illegal entry under 8 U.S.C. § 1325 in 2004, and convicted of illegal reentry under 8 U.S.C. § 1326 in 2007. At all times, the only actual removal order issued against Rodriguez-Ocampo was the invalid stipulated order.

On October 11 and again on October 27, 2009, Rodriguez-Ocampo was apprehended for entering the United States illegally near the port of entry in Calexico, California. After the October 27 arrest, the government charged Rodriguez-Ocampo with one count of illegal reentry under § 1326. After Rodriguez-Ocampo's counsel alerted the government that the underlying stipulated removal order was invalid, the government dismissed the § 1326 indictment and obtained a superseding indictment charging Rodriguez-Ocampo with two counts of illegal entry under § 1325. *See United States v. Mendoza-Lopez*, 481 U.S. 828 (1987) (holding that removal proceedings that eliminate judicial review cannot form the basis for an illegal reentry prosecution). A jury convicted Rodriguez-Ocampo of both counts of illegal entry.

The government then sought a sixteen-level sentencing enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii), which provides for such an enhancement "[i]f the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence." The presentence report (PSR) also recommended this enhancement based on Rodriguez-Ocampo's previous removals and his Oregon assault conviction. Rodriguez-Ocampo objected to the PSR, arguing that, like a prosecution for illegal reentry, U.S.S.G. § 2L1.2(b) requires a previous *valid* order of removal. The district court overruled Rodriguez-Ocampo's objection and held that under our decision in *United States v. Luna-Madellaga*, 315 F.3d 1224 (9th Cir. 2003), an alien's physical removal from the United States after a conviction for a crime of violence is all that is necessary to trigger the sentencing enhancement. Applying this enhancement, the district court calculated Rodriguez-Ocampo's sentencing guideline range using an offense level of 24 and a criminal history category of 5, resulting in a range of 92-115 months. The district court imposed the statutory maximum of 24 months on each count, to run consecutively.

Rodriguez-Ocampo timely appealed the application of the sentencing enhancement. "We review de novo the district court's interpretation of the Sentencing Guidelines. . . ." *United States v. Berger*, 587 F.3d 1038, 1041 (9th Cir. 2009).

## II.

**[1]** In 1987, the Supreme Court held that where a prior deportation proceeding effectively eliminated the alien's right to obtain judicial review, the prior deportation may not form the basis for an illegal reentry prosecution under § 1326. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-40 (1987).[1]

---

[1]The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") eliminated the previous legal distinction between deportation, removal, and exclusion, merging all into a broader category entitled "removal." *See United States v. Lopez-Gonzalez*, 183 F.3d 933, 934-35 & n.4 (9th Cir. 1999).

After determining that § 1326 itself did not allow a defendant to challenge the underlying removal order, the Court concluded that "[i]f the statute envisions that a court may impose a criminal penalty for reentry after *any* deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been, the statute does not comport with the constitutional requirement of due process." *Id.* at 837. The Court further cautioned that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *Id.* at 837-38. Congress subsequently codified the principles of *Mendoza-Lopez* at 8 U.S.C. § 1326(d), allowing a defendant to collaterally attack the underlying removal order if "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."

In later cases, however, the government argued that "even if the original removal proceeding was constitutionally flawed and could not lawfully support a charge of illegal reentry . . . later reinstatements of that removal provide an independent basis for the illegal reentry charge." *United States v. Arias-Ordonez*, 597 F.3d 972, 978 (9th Cir. 2010). We rejected this argument, explaining that "[t]he government's problem is that all of Arias-Ordonez's reinstatements were reinstatements of the original removal. That removal was not legally sound. Therefore, none of the reinstatements is legally any stronger than the original order." *Id.*

Here, the government asks us to hold that even if a removal proceeding was constitutionally flawed and cannot lawfully support a charge of illegal reentry under § 1326, it can support a sixteen-level sentencing enhancement after a defendant has been convicted of illegal entry under § 1325. The government

relies on our decisions in *United States v. Luna-Madellaga*, 315 F.3d 1224 (9th Cir. 2003), and *United States v. Diaz-Luevano*, 494 F.3d 1159 (9th Cir. 2007) (per curiam).

In *Luna-Madellaga*, the government sought a sentencing enhancement under 8 U.S.C. § 1326(b)(2), which raises the statutory maximum for illegal reentry to twenty years for aliens "whose removal was subsequent to a conviction for commission of an aggravated felony."[2] 315 F.3d at 1225. Luna-Madellaga had been removed once, was subsequently convicted of an aggravated felony, and then was removed again via reinstatement of his first removal order. *Id.* He contended that since only the reinstatement, and not the original removal order, was "subsequent to" his conviction, the sentencing enhancement should not apply. *Id.* at 1226. We disagreed, holding that the reference to "removal" in the context of the sentencing enhancement referred to "the alien's *physical* removal — not the *order* of removal." *Id.* *Diaz-Luevano* reaffirmed *Luna-Madellaga* after our decision in *Morales-Izquierdo v. Gonzales*, 486 F.3d 484 (9th Cir. 2007) (en banc) (holding that reinstatement of a removal order is not a species of removal).

The government contends that *Luna-Madellaga* and *Diaz-Luevano* control our decision here, because Rodriguez-Ocampo was physically removed subsequent to his conviction for a crime of violence. But this argument overlooks the fact that our decision in *Luna-Madellaga* was premised on the validity of the original removal order. We expressly noted that any due process concerns implicated by our decision were remedied by the valid underlying order, explaining that "an alien who illegally reenters the United States while under an order of removal has already received a full and fair hearing, including judicial review of that hearing, which affords all the

---

[2]This sentencing enhancement is implemented by U.S.S.G. § 2L1.2(b)(1), the same Guideline that was applied to Rodriguez-Ocampo in the present case. *See Luna-Madellaga*, 315 F.3d at 1225.

process to which he is entitled." *Luna-Madellaga*, 315 F.3d at 1226-27. Our later decision in *Arias-Ordonez* also recognized this, noting that *Luna-Madellaga* and *Diaz-Luevano* apply only "to a specific sequence of events, *a valid removal order* and conviction of an aggravated felony." 597 F.3d at 982 (emphasis added).

**[2]** Where, as here, the underlying removal order completely eliminated judicial review, the alien has never received "a full and fair hearing, . . . the process to which he is entitled." *Luna-Madellaga*, 315 F.3d at 1226-27. Allowing that removal order, or a reinstatement of that removal order, to form the basis for a sentencing enhancement would contradict the Supreme Court's instruction in *Mendoza-Lopez* that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." 481 U.S. at 837-38. We clarify that under *Luna-Madellaga*, an alien's physical removal is sufficient to trigger the sentencing enhancements under U.S.S.G. § 2L1.2(b) only when the physical removal is premised on an underlying valid order of removal. An order of removal that provided the alien with no opportunity for judicial review and cannot support a prosecution under 8 U.S.C. § 1326, or a reinstatement of such an order, cannot support a sentencing enhancement under U.S.S.G. § 2L1.2(b).

## III.

**[3]** Because Rodriguez-Ocampo's original removal order improperly waived his right to judicial review, we hold that the district court erred when it applied the sentencing enhancement under U.S.S.G. § 2L1.2(b) and thus committed procedural error by incorrectly calculating Rodriguez-Ocampo's Guidelines range. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008). We therefore vacate Rodriguez-Ocampo's sentence and remand for resentencing. We note that on remand, while Rodriguez-Ocampo's prior removal

order cannot support an enhancement under U.S.S.G. § 2L1.2(b), the district court is free to consider Rodriguez-Ocampo's multiple reentries when considering the appropriate sentencing factors under 18 U.S.C. § 3553(a).

VACATED and REMANDED.