**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50627 |
| Plaintiff - Appellee, | D.C. No. 3:09-cr-01975-GT-1 |
| v. | |
| ARTURO CISNEROS-FLORES, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50628 |
| Plaintiff - Appellee, | D.C. No. 3:10-cr-00914-LAB-1 |
| v. | |
| ARTURO CISNEROS-FLORES, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Gordon Thompson, Senior District Judge, Presiding

Argued and Submitted October 12, 2011
Pasadena, California

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: FERNANDEZ and CALLAHAN, Circuit Judges, and ERICKSON, Chief District Judge.[**]

In this consolidated appeal, Arturo Cisneros-Flores challenges his conviction following a conditional guilty plea to illegal entry after deportation, in violation of 8 U.S.C. § 1326.  Cisneros also challenges the district court's revocation of his supervised release from a prior § 1326 conviction.  Both challenges are based on alleged due process violations resulting from denial of counsel at his 1997 deportation proceeding.  Cisneros contends that he should have been told, by counsel or by the immigration judge ("IJ"), of the possibility that he could avoid deportation by marrying his girlfriend.  We affirm.

Cisneros first came to the United States from Mexico when he was 20 years old, in about 1987.  He entered without inspection and began living in Oakland, California.  He was homeless for several years, and was convicted of several misdemeanor offenses for petty theft and drug possession.  In 1994, Cisneros became romantically involved with Tina Gomez, a United States citizen, and began

_____

[**]    The Honorable Ralph R. Erickson, Chief District Judge for the U.S. District Court for North Dakota, sitting by designation.

raising her three children with her. He fathered a child with her in 1999, but that child was given up for adoption.

Cisneros has been deported at least eight times since 1995. On January 14, 1997, Cisneros appeared without counsel in front of the immigration judge ("IJ") for a hearing in what was at least his third deportation proceeding. The IJ told Cisneros that he could have an attorney represent him if he wished, confirmed that Cisneros had received the court's lawyer list, and confirmed that he had been informed of his appellate rights. He asked Cisneros if he wanted time to find a lawyer, and Cisneros said yes. The IJ continued the hearing for two weeks to January 29, 1997.

Cisneros appeared at the January 29, 1997 hearing, again without counsel. The IJ noted that Cisneros had made a request for a bond hearing, but told Cisneros that "we're not here for that reason[] today." The IJ explained that Cisneros could present evidence at the hearing, and that the government attorney could present evidence against him, and proceeded with the deportation hearing without inquiring whether Cisneros still wanted an attorney.

After being removed, Cisneros reentered the country without the Attorney General's permission. He was arrested, and on December 2008, Cisneros pled guilty to being a deported alien found in the United States. He was sentenced to 30

days imprisonment. In June 2009, after being removed and again arrested for reentering without permission, Cisneros pled guilty to being a deported alien found in the United States in violation of 8 U.S.C. § 1326. He was sentenced to 8 months imprisonment and 3 years of supervised release, and he was again removed.

On January 27, 2010, Cisneros was again found in the United States and arrested. He was charged with illegal reentry after deportation in violation of 8 U.S.C. § 1326(a) and (b). Cisneros moved to dismiss the indictment on the ground that the IJ in the 1997 deportation proceeding had denied him his right to counsel and failed to advise him of potential relief. He argued that the January 1997 deportation hearing was "fundamentally unfair" because the IJ failed to (1) advise him that he could adjust his status in proceedings based on his relationship with his United States citizen "common-law spouse," and (2) find that he had made a knowing and voluntary waiver of his right to counsel. He argued that he need not show actual prejudice from the denial of counsel, but that he was prejudiced because an attorney would have advised him to formalize his common-law marriage which would have offered a basis for adjustment of status under INA § 245(d).

The district court denied Cisneros' motion to dismiss, and Cisneros entered a conditional guilty plea pursuant to an agreement with the government. The District

Court sentenced him to 16 months' imprisonment, to be followed by three years of supervised release. His supervised release from his 2009 conviction was also revoked, and he was sentenced to an additional consecutive term of 12 months on his 2009 conviction. Cisneros appeals both the new 2010 conviction and his sentence on the 2009 supervised release revocation.

The denial of a motion to dismiss an indictment is reviewed de novo when, as here, the motion "is based on alleged due process defects in the underlying deportation proceeding." *United States v. Moriel-Luna*, 585 F.3d 1191, 1196 (9th Cir. 2009).

1.      Cisneros first argues that the IJ should have advised him that he might be entitled to an adjustment of status due to his relationship with Gomez. This argument fails.

An IJ must "inform the respondent [in a deportation hearing] of his apparent eligibility to apply for any of the benefits [of relief from deportation] enumerated in this paragraph and . . . afford him an opportunity to make application therefor during the hearing." *Moran-Enriquez v. I.N.S.*, 884 F.2d 420, 422 (9th Cir. 1989) (quoting 8 C.F.R. § 242.17(a) (1988)). However, the IJ is under no duty to "act creatively to advise an immigrant of ways in which his legal prospects at forestalling deportation might improve with fundamental changes in his status."

*Moriel-Luna*, 585 F.3d at 1198. Moreover, the "IJ had no duty to inform him of relief for which he was not eligible . . . ." *United States v. Lopez-Velasquez*, 629 F.3d 894, 899 (9th Cir. 2010) (en banc) (holding "that an IJ's duty is limited to informing an alien of a reasonable possibility that the alien is eligible for relief at the time of the hearing").

Here, the IJ was not required to advise Cisneros of a possible adjustment of status. The facts as presented to the IJ were that Cisneros had a "girlfriend," and he expressly stated he was not married to her. Contrary to Cisneros's contentions in his briefs, he did not at any time advise the IJ that he planned on marrying Gomez. "We do not require IJs to speculate about the possibility of anticipated changes of circumstances and advise aliens of facts not suggested in the record." *Moriel-Luna*, 585 F.3d at 1197. The IJ had no duty to advise Cisneros about the possibility of adjusting his status should he marry his girlfriend.

2.     Cisneros next argues that he was deprived of his Fifth Amendment rights because he was denied counsel at his 1997 removal hearing without affirmatively waiving his right to counsel. Although the government apparently concedes that Cisneros' Fifth Amendment rights were violated by deprivation of counsel, and the district court agreed, it is not clear that his rights were actually violated.

-6-

A respondent in immigration proceedings has a Fifth Amendment right to counsel at no cost to the government. *Ram v. Mukasey*, 529 F.3d 1238, 1241 (9th Cir. 2008). We have "reiterated many times that an alien cannot appear pro se without a knowing and voluntary waiver of the right to counsel." *Id.* at 1242 (internal quotation omitted). This means that the IJ "at a minimum . . . must [(1)] inquire whether the petitioner wishes counsel, [(2)] determine a reasonable period for obtaining counsel, and [(3)] assess whether any waiver of counsel is knowing and voluntary." *Id.* at 1241 (quoting *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir.2004)). We have strictly enforced these requirements and required an IJ to elicit an express waiver of the right to counsel by asking the alien if he desired to continue pro se and "direct[ing] . . . questions to [alien] concerning the implications of proceeding without an attorney." *Id.* at 1242 (internal quotation omitted).

This is not to imply an alien can "game the system" and postpone deportation proceedings indefinitely simply by not obtaining counsel and refusing to waive his right to counsel. After waiting "a reasonable period for obtaining counsel," the IJ can proceed even though the alien is not represented. "However, in order to proceed without counsel, an IJ must comply with the requirements of

*Tawadrus*, and determine, in the absence of a showing of good cause for an additional continuance, that the right to counsel has been forfeited." *Id.*

Here, the IJ did not expressly make such a determination. That is not to say it would have been error to proceed without giving Cisneros additional time to obtain counsel, especially since Cisneros did not request additional time. The IJ had previously given Cisneros two weeks to obtain counsel after ensuring that Cisneros already had the list of free attorneys. Cisneros does not argue that he was prevented from obtaining counsel during that time, or offer any explanation for why he failed to obtain counsel. "Absent a showing of clear abuse, we typically do not disturb an IJ's discretionary decision not to continue a hearing." *Biwot v. Gonzalez*, 403 F.3d 1094, 1099 (9th Cir. 2005). Had the IJ refused to grant Cisneros additional time to obtain counsel, there is no indication it would have been clear error.

However, even if we assume, as the district court did, that Cisneros was denied counsel, that does not end the inquiry or entitle Cisneros to relief. We have denied challenges to underlying removals where the aliens alleged violations of the right to counsel in the underlying removal proceedings unless the alien can show prejudice. *United States v. Cerda-Pena*, 799 F.2d 1374, 1379 (9th Cir. 1986) (even assuming the defendant had been denied counsel, he did not show that this denial

-8-

"actually had the potential for affecting the outcome of the deportation proceedings"); *United States v. Villa Fabela*, 882 F.2d 434, 439-40 (9th Cir. 1989), *overruled in part on other grounds by United States v. Proa-Tovar*, 975 F.2d 192, 595 (9th Cir. 1992) (en banc) (IJ's alleged failure to advise of the available of free legal service programs did not entitle defendant to relief because he had not "demonstrat[ed] that the claimed procedural flaws in his deportation proceeding were prejudicial" and he was not eligible for relief from removal). Taken together, these cases require Cisneros to show he suffered prejudice as a result of the denial of counsel in order to obtain relief. To show prejudice, Cisneros must show that he had "plausible grounds from relief from deportation." *United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998).

Cisneros contends that the absence of an attorney "potentially affected the outcome of the proceedings," because – given his long-term, committed relationship in 1997 – an attorney would have advised him to get married and thereby open an avenue for relief. Cisneros could not have shown plausible grounds for relief from deportation because he was not eligible for relief. He could not have adjusted his status to that of a lawful permanent resident until he *actually*

*married* Gomez, and marriage was neither imminent nor reasonably certain at the time of his removal hearing in 1997.[1]  Thus, Cisneros cannot show prejudice.

3.    Cisneros also challenges the revocation of his supervised release from his 2009 conviction.  In making his challenge he asks us to "create an exception to the general rule articulated in" *United States v. Simmons*, 812 F.2d 561 (9th Cir. 1987), that a defendant may not challenge the validity of his conviction on direct appeal of a supervised release revocation sentence.  "The conviction may be collaterally attacked only in a separate proceeding under 28 U.S.C. § 2255. . . ." *Id*. at 563.  His rationale is that because the 2009 conviction was based on the same underlying 1997 deportation as the 2010 conviction, if that deportation is invalidated due to a deprivation of counsel then he cannot be guilty of the 2009 incident either.

We decline to create such an exception.  Cisneros voluntarily waived his right to challenge the 2009 conviction and sentence, and he will be held to that waiver even if he challenges a later conviction.  Furthermore, for the reasons we affirm Cisneros' 2010 conviction, we would also affirm his 2009 conviction were we to reach its merits.

---

[1]    Some 14 years after the claimed deprivation of counsel, Cisneros remains ineligible for an adjustment of status because he is still not married.

The IJ did not have a duty in 1997 to advise Cisneros to get married so that he could adjust his status. Even if we assume the IJ violated Cisneros' Fifth Amendment right to counsel in his 1997 deportation hearing, he cannot show prejudice. Cisneros has waived his right to challenge his 2009 conviction, and in any event, there is no basis for his challenge to the revocation of supervised release because we do not invalidate the 1997 deportation.

**AFFIRMED**.